# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN WOLINSKY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 3:08cv832 (MRK) |
| v. | : | |
| | : | |
| STANDARD OIL OF CONNECTICUT, | : | |
| INC. and DAVID COHEN, | : | |
| | : | |
| Defendants. | : | |

## **RULING AND ORDER**

Plaintiff Steve Wolinksy has brought suit against his former employer, Standard Oil of Connecticut, Inc. ("Standard Oil") and his former supervisor, David Cohen, Standard Oil's Executive Vice President.  Currently pending is Defendants' Motion for Summary Judgment [doc. # 66] on the three claims that remain in this case.[1] The first of those claims, asserted only against Standard Oil, alleges retaliation for Mr. Wolinksy's engagement in activity protected by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).  *See* Compl. [doc. # 1] at 7-8.  The other two claims, asserted against both Defendants, allege common-law libel and libel *per se*.  *See id.* at 10-11.  The Court held oral argument on the pending motion on March 31, 2010.  For the reasons that follow, the Court finds that there are disputed issues of material fact that preclude summary judgment, and therefore Defendants' Motion for Summary Judgment [doc. # 66] is DENIED.

---

[1] Mr. Wolinsky initially brought four other claims, and the Defendants asserted a counterclaim, but following oral argument, the parties notified the Court that they had stipulated to the dismissal of four of Mr. Wolinsky's claims and Defendants' counterclaim, *see* Stipulation of Dismissal [doc. # 83], and therefore those claims are no longer before the Court.

1

# I.

The Court assumes the parties' familiarity with the factual background and procedural history to date, and recites only those facts necessary for the resolution of Defendant's motion.   The following facts are taken from the parties' statements of material facts not in dispute.   *See* Defs.' Local Rule 56(a)1 Statement [doc. # 67]; Pl.'s Local Rule 56(a)2 Statement [doc. # 79].   Unless otherwise indicated, these facts are undisputed, and the Court will introduce other facts below as necessary.

Mr. Wolinksy was hired by Standard Oil, which primarily sells heating oil, in April 1993 as an alarm salesman.   In 1995, he was promoted to the manager of oil telesales operation, where he was responsible for hiring, training and supervising oil sales telemarketers.   Although there is some dispute about Mr. Wolinksy's work performance from 2003 onward, the employer-employee relationship declined in earnest beginning in 2007.   On January 14, 2008, Mr. Wolinksy mailed a complaint to the Connecticut Department of Labor ("DOL"), alleging that Standard Oil was violating the FLSA.   Mr. Wolinksy provided Standard Oil with a copy of the DOL complaint the same day.

Around the same time, Standard Oil informed Mr. Wolinksy that while he had previously received commissions on home oil sales, his compensation above his salary would henceforth be in the form of a subjective bonus, purportedly in line with Standard Oil's practice in regards to its other managers.[2]   Mr. Wolinksy says that he was first told of this change on January 15, 2008 – the day after he gave Standard Oil a copy of his first DOL complaint.   According to Standard Oil, however, Mr. Wolinsky was informed of the change to his compensation structure four days earlier, on

_____

[2]   While Standard Oil describes the pay Mr. Wolinksy received prior to 2008 as a "bonus," rather than "commission," the characterization is immaterial to the resolution of Defendants' Motion for Summary Judgment.

January 11, 2008.

What is undisputed, however, is that the employment relationship rapidly deteriorated in the subsequent months, resulting in Mr. Wolinksy's termination on April 17, 2008.  In the intervening months, Mr. Wolinksy filed six additional DOL complaints about Standard Oil practices that he believed violated the FLSA.  Standard Oil responded to the substance of several of these complaints by defending its practices to its employees, both informally and in formal memoranda.  Mr. Wolinksy alleges that several of these efforts by Standard Oil were intended to discredit him within the company and to make life difficult for him, some of which he says amount to independent actions of retaliation.  Mr. Wolinksy also alleges that his supervisors began making unreasonable work-related demands of him and his time; refused to pay him commissions he had already earned under his previous compensation structure; and installed surveillance equipment over his desk in order to monitor and intimidate him.  Standard Oil, for its part, alleges that Mr. Wolinksy became openly hostile to performing his legitimate work responsibilities; made unreasonable demands for a severance package in exchange for his resignation; threatened Standard Oil with additional DOL complaints; harassed his co-workers to try to have them join his protests of Standard Oil practices; and otherwise violated his duty of loyalty to the company.

The parties do not dispute, however, that on March 31, 2008, Mr. Wolinksy placed envelopes on employees' vehicles in the company parking lot that contained copies of all seven of his DOL complaints, along with a letter that accused Standard Oil of not only engaging in illegal labor practices, but also of distributing intentionally misleading and false information to employees regarding the legality of its practices.  The following day, Standard Oil distributed a letter to its employees, signed by Mr. Cohen, that respond to Mr. Wolinsky's accusations.  The letter states, in

relevant part:

> You may have recently found a letter from Steve Wolinsky, our sales manager, on your car's windshield along with a host of complaints that Steve has filed against us with the State and Federal Departments of Labor. I am sorry you are being dragged into this bizarre situation, but given what Steve is doing, I feel it is important that you are informed as to what is going on.
>
> At the beginning of January, 2008, we informed Steve that we were changing his bonus compensation package to bring it more in line with his performance and the pay of other managers in this company. . . .  He immediately started to file complaints against Standard Oil with the various labor departments so that he could get "whistleblower" protection. He· also wanted us to pay him to "go away" . . . .
>
> I think you know Roy [Friedman, President of Standard Oil] and me well enough that we *will not submit to extortion*, even though that might be the easier path. . . .

Letter from David Cohen, Ex. A-46 to Defs.' Local Rule 56(a)1 Statement [doc. # 67] at 1 (emphasis added).  On April 2, 2008, Mr. Cohen suspended Mr. Wolinsky for approximately two weeks, and explained in a letter to Mr. Wolinsky that his suspension was based on his March 31 letter to employees and his "harassing and inappropriate behavior" of the prior three months.  *See* Suspension Letter dated Apr. 2, 2008, Ex. A-50 to Defs.' Local Rule 56(a)1 Statement [doc. # 67] at 1.  Mr. Cohen requested that upon his return, Mr. Wolinsky attempt to remedy the damage he had caused by apologizing to coworkers and to "act appropriately in all circumstances."  *Id.* at 2.  Mr. Cohen warned that "if I find any instance that you are again behaving inappropriately, you will be terminated immediately."  *Id.*

By letter dated April 3, 2008, Mr. Wolinsky's counsel demanding that Mr. Cohen retract the statement in the April 1, 2008 letter to employees accusing Mr. Wolinsky of extortion.  *See* Pl.'s Counsel Letter dated Apr. 3, 2008, Ex. A-51 to Defs.' Local Rule 56(a)1 Statement [doc. # 67].  Mr. Cohen did so in a memo to company employees dated April 12, 2008, explaining that "I have come to find that the word 'extortion' has a particular legal meaning. Steve's actions, and his request that

4

we pay him to 'go away,' while troubling, may not technically rise to the level of extortion. I therefore hereby retract that particular sentence in my letter." Def. Cohen's Mem. dated Apr. 12, 2008, Ex. A-52 to Defs.' Local Rule 56(a)1 Statement [doc. # 67].

Mr. Wolinsky returned to work on April 14, 2008, but his return was short-lived. According to Defendants, several of Mr. Wolinsky's coworkers expressed discomfort with his continued presence, and the Defendants felt as though Mr. Wolinsky was not complying with Mr. Cohen's prior request that he attempt to rectify the damage done to his relationships with other employees. Defendants also say that when he returned, Mr. Wolinsky was spending an inordinate time writing in a journal (Mr. Wolinsky says he only wrote in it during breaks). On April 17, 2008, Mr. Cohen and Mr. Friedman demanded to see the contents of the journal. Mr. Wolinsky resisted, saying that he wished to speak with his attorney before handing over the journal. Mr. Friedman and Mr. Cohen then decided to terminate Mr. Wolinksy. Mr. Cohen memorialized the reasons for doing so in a letter dated April 18, 2008. *See* Cohen. Aff. [doc. # 68-1] ¶ 114.

Mr. Wolinksy filed suit in Connecticut Superior Court on May 5, 2008, alleging, in part, that he had been retaliated against for engaging in activity in protected by the FLSA and that Mr. Cohen's statement accusing Mr. Cohen of extortion constituted libel and libel *per se*. *See* Compl. [doc. # 1]. Defendants removed the case to this Court on June 2, 2008, *see id.*, and filed the instant Motion for Summary Judgment [doc. # 66] on November 30, 2009, following the close of discovery.

## II.

The standard for deciding motions for summary judgment is a familiar one. In short, the purpose of summary judgment is not to resolve factual disputes, but rather to see if there *are* any facts material to a claim that remain in dispute. Summary judgment will not be granted unless "the

5

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(2). The burden is on the moving party to show that there are no disputed issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once that burden has been met, in order to defeat summary judgment the non-moving party must come forth with specific facts, supported by non-conclusory, admissible evidence, that demonstrate the existence of a dispute of material fact. *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, due to the difficulties inherent in unearthing direct evidence of discriminatory intent, the Second Circuit has cautioned that district courts should be careful "about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Nonetheless, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id. See also Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### III.

The Court first considers Mr. Wolinksy's claim of FLSA retaliation, which is asserted only against Standard Oil. *See* Compl. [doc. # 1] at 7-8. The FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ". 29 U.S.C. § 215(a)(3). In order to establish a prima facie case of FLSA retaliation, Mr. Wolinsky must show:  "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection

between the protected activity and the adverse employment action." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998). If Mr. Wolinksy satisfies this initial burden, Standard Oil must then proffer a legitimate, non-discriminatory reason for its actions. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). Should Standard Oil do so, the ultimate burden of proving discrimination shifts back to Mr. Wolinksy "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (quotation marks and citation omitted).

Standard Oil argues first that Mr. Wolinksy has not made out a prima facie case of retaliation. *See* Defs.' Mem. in Supp. of Summ. J. [doc. # 68] at 9-21. Standard Oil does not dispute that Mr. Wolinksy has satisfied the first two requirements of the prima facie case. It is uncontested that Mr. Wolinksy engaged in activity protected by the FLSA – namely, his seven complaints to the Connecticut and federal departments of labor – and the change to Mr. Wolinksy's compensation from commission on sales to a subjective bonus could clearly constitute an adverse employment action.[3] *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The crux of Standard Oil's argument focuses on the third prong of the prima facie test – i.e., whether Mr. Wolinksy has produced evidence that, if believed, could lead a reasonably jury to conclude that there was a causal connection between his protected activity and the adverse employment action. Standard Oil argues that he has not done so. This Court is unpersuaded.

_____

[3] Standard Oil also argues that a number of its actions that Mr. Wolinksy has labeled as adverse employment actions cannot, as a matter of either fact or law, be considered adverse. *See* Defs.' Mem. in Supp. of Summ. J. [doc. # 68] at 12-21. The Court agrees that some of these actions do not meet the definition of adverse employment actions. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). However, the change in Mr. Wolinksy's compensation structure clearly does fit that definition, *see id.*, and therefore it is unnecessary for the Court to decide, at this point, which of the other identified employment actions could also be considered adverse.

At its core, this case comes down to a swearing match about who retaliated against whom for what and when. All parties agree that Mr. Wolinksy mailed the first DOL complaint on January 14, 2008, and that he gave a copy of it to Standard Oil that same day. *See* Wolinksy Aff. [Ex. 78-1] ¶ 16. According to Mr. Wolinksy, the first he heard of any change to his bonus was the morning of the following day, when Mr. Cohen allegedly told him that Standard Oil "wanted [him] gone"; asked what it would take for him to leave (in the form of a severance package); and informed Mr. Wolinksy that his bonus structure was being changed. *See id.* ¶ 17. If true, the extremely close temporal proximity between the protected activity and the adverse employment action – a single day – would be sufficient to meet Mr. Wolinksy's burden of proving a causal connection. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("[M]ere temporal proximity between an employer's knowledge of protected activity and an adverse employment action [can establish] sufficient evidence of causality to establish a prima facie case . . . [if] the temporal proximity [is] 'very close'") (citation omitted); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.").

Standard Oil, however, asserts that Mr. Cohen and Mr. Friedman met with Mr. Wolinksy to tell him about the bonus change on January 11, 2008 (the Friday before). *See* Cohen Aff. [Ex. 68-1] ¶¶ 39. While this alleged conversation of January 11, 2008 was not memorialized in any form, Standard Oil points to circumstantial evidence that it says supports their contention. For example, during a January 15, 2008 conversation that was recorded without Mr. Wolinsky's knowledge, Mr. Cohen and Mr. Wolinksy have the following exchange after Mr. Wolinksy complains that he does not feel like he is wanted any longer:

**Mr. Cohen:**    Steve, I don't know why you think we didn't, we don't want you here.  I mean, you . . . we talked to you about, you know, your bonus situation.  We want to treat you like any other manager, which is a base and a bonus as we discussed on Friday.

**Mr. Wolinksy:**  I'm not like anybody else and, you know, I didn't, I don't recall in that meeting . . . that was a, that's a separate meeting.  That meeting was called to talk about the sales, you know, for the future.

**Mr. Cohen:**    It was the beginning of the year, so we talked about we talked about how you are going to be paid for the upcoming year.

**Mr. Wolinksy:**  Well that is what you say, but the, you know, in the meeting, the meeting was called for the purpose of discussing the planning for the future, planning, you know, for 2008 and that's what it was about, you know.

Recorded Conversation of Jan. 15, 2008, Ex. A-10 to Cohen Aff. (ellipses in original).  Standard Oil argues that this conversation reflects Mr. Wolinksy failing to deny that the conversation in question had happened the Friday before, on January 11.

Similarly, there were email exchanges in which Mr. Cohen was careful to state that he had told Mr. Wolinksy on January 11 that his bonus structure was being changed; here again, Standard Oil says Mr. Wolinksy's failure to deny these statements amounts to tacit acknowledgment that Mr. Cohen's statements were true.  *See* Email correspondence dated Jan. 21, 2008, Ex. A-15 to Coehn Aff.; Email correspondence dated Mar. 17, 2008, Ex. A-11 to Cohen Aff.  Additionally, Mr. Wolinksy did not respond to a letter sent to his lawyer on January 17, 2008, which made the same assertion.  *See* Standard Oil Letter dated Jan. 17, 2008, Ex. A-14 to Cohen Aff.

Standard Oil makes two arguments for why Mr. Wolinksy's silence and/or failures to deny Mr. Cohen's statements regarding the dates entitle them to summary judgment.  First, it cites cases from other Circuits for the supposed proposition that silence can equate to an admission.  *See* Def.'s Mem. in Supp. [doc. # 68] at 10-11.  But these cases are not particularly relevant in the present

context.  In *Marshall v. Young*, for example, the Seventh Circuit discussed the argument that a particular hearsay statement was properly admitted under the "adoptive admissions" exception to the hearsay rule.  *See* 833 F.2d 709, 716 n.3 (7th Cir. 1987) ("The adoptive admission exception applies when a party manifests the adoption or belief of a statement.  *See* Fed. R. Evid. 801(d)(2)(B). Adoption can be manifested by any appropriate means, such as language, conduct or silence."); Fed. R. Evid. 801(d)(2)(B) (providing that a statement is not hearsay if it "is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth . . . .).  Even this discussion was *dicta*, however, as the Seventh Circuit ultimately held that the statement was sufficiently reliable regardless of the "adoptive admissions" exception, and that therefore the criminal defendant's rights under the Confrontation Clause were not violated.  *See* 833 F.3d at 716-17.  The other cases cited by Defendant are similarly inapplicable.  *See Lefevre v. Cain*, No. 05-6288, 2008 WL 718135, *3 (E.D. La. Mar. 14, 2008) (discussing if and when silence-as-acquiescence can constitute a communication protected by the attorney-client privilege); *Ishler v. Cook*, 299 F.2d 507, 510 (7th Cir. 1962) (making the observation that "[e]vidence that a statement has been made in one's presence and hearing may be relevant because failure to deny that statement has probative value as an admission.").

Standard Oil also cites an Eighth Circuit case discussing when silence can constitute evidence that a party accepts a contract term.  *See  Megarry Bros., Inc. v. United States*, 404 F.2d 479, 488 (8th Cir. 1968) ("Failure to reply to a letter, containing statements which it would be natural under all the circumstances for the addressee to deny if he believed them untrue, is receivable as evidence of an admission by silence.") (citation omitted).  Reliance on *Megarry Bros.* is flawed for any number of reasons, most notably because this Court does not believe that, under the

particular circumstances presented in this case, that it would have been "natural" for Mr. Wolinksy to have specifically refuted the statements in the emails and letter asserting that he was told about the change in his bonus on January 11, rather than some other date.  Mr. Wolinksy is not a lawyer, and the significance of the date may easily have been lost on him.  Mr. Wolinksy's primary concern, as evidenced by the emails, was that he was not being paid the commissions to which he felt he was entitled under the prior year's bonus structure (and which formed the basis of Counts Two through Four, which the parties previously agreed to dismiss, *see supra* note 1).  Whether the change to his compensation structure had occurred on January 11 or January 15 was a little consequence to Mr. Wolinksy's primary – if not exclusive – concern: whether he would get paid for the commissions he felt he had already earned under the compensation plan effective when those sales were made.  The fact that Standard Oil was clearly cognizant of the date's significance is inconsequential, for the simple reason that its significance was never communicated to Mr. Wolinsky.  In short, it would go beyond this Court's role at the summary judgment stage to simply assume that Mr. Wolinksy understood the significance of the date.  And yet this assumption is crucial for Standard Oil's argument that Mr. Wolinksy's silence on this issue conclusively establishes that Standard Oil's factual contention that the change to Mr. Wolinksy's compensation was made before he made his first DOL complaint, rather than after. In sum, because the Court rejects this assumption for purposes of summary judgment, Standard Oil's first argument on the FLSA retaliation claim fails.

Standard Oil's second, related argument, first raised on reply, is that Mr. Wolinsky's "prior contemporaneous admissions control over his recently crafted affidavit opposing the summary judgment motion."  Defs.' Reply Mem. [doc. # 82] at 6.  For support, however, Standard Oil again cites cases that stand for inapposite propositions.  One set of cases hold that prior testimony and

discovery responses – i.e., <u>sworn statements</u> – control when contradicted by subsequent affidavits filed in opposition to a motion for summary judgment. *See id.* The other set of cases discuss how a "self-serving, <u>factually-unsupported</u> conclusory statement is not the type of evidence that is sufficient to create a triable issue of fact." *Id.* at 7 (quoting *Barros v. Miller*, No. 3:03cv1613, 2005 WL 2416109, at *3 (D. Conn. Sept. 30, 2005) (emphasis added)). These cases, for obvious reasons, do not do the work that Standard Oil wants them to. The first set of cases would equate silence to sworn discovery responses – a leap this Court is unwilling to make for the reasons previously discussed – while the second set of cases is inapplicable for the simple reason that Mr. Wolinksy's statements are based on his personal observations, and are not of the "factually unsupported" nature contained in the cases to which Standard Oil cites.

For example, in *Barros*, the first case cited by Standard Oil, the relevant portion of the plaintiff's affidavit speculated that she had been reassigned to a different job because of the defendant's desire to punish her. *See* 2005 WL 2416109, at *3. Similarly, in the only other case cited by Standard Oil for support of this proposition, the court found that the plaintiff's complaints of "terrible" back pain was contradicted by the medical records in evidence. *See Geyer v. Lantz*, No. 303CV1853, 2005 WL 1657126, at *4 (D. Conn. July 14, 2005). Here, in contrast, the portion of Mr. Wolinksy's affidavit that Standard Oil wishes to discredit does not speculate about others' intentions or about other matters about which he could not know; rather, Mr. Wolinsky asserts, based on his personal observation, that the conversation in question happened on January 15, 2008. *See* Wolinsky's Aff. [doc. # 77-1] ¶¶ 35-36. Nor is Mr. Wolinksy's affidavit contradicted by anything other than Defendants' sworn statements to the contrary.

Evidence at trial may or may not establish Mr. Wolinsky's assertion about the date of the

12

relevant conversation to be true, but for purposes a motion for summary judgment, the Court is required to accept it as true.  *See Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (on summary judgment, a court must accept as true the allegations in the complaint and "resolv[e] all ambiguities and draw[] all permissible factual inferences in favor of the party against whom summary judgment is sought.") (internal quotation marks omitted).  And as discussed above, if the jury believes Mr. Wolinksy's account, it could reasonably conclude, on the basis of the extremely close temporal proximity, that the change in his compensation structure was retaliation for the DOL complaint he made the previous day.  *See Espinal v. Goord*, 558 F.3d at 129.  Accordingly, the Court finds that Mr. Wolinsky has sufficiently established a prima facie case of FLSA retaliation.

Standard also argues that even if Mr. Wolinksy has made out a prima facie case of retaliation, it is still entitled to summary judgment because Mr. Wolinksy cannot rebut Standard Oil's legitimate, non-discriminatory reason for taking an adverse employment action.  *See* Defs.' Mem. in Supp. of Summ. J. [doc. # 68] at 22-31; Defs.' Reply Mem. [doc. # 82] at 1-4.  Standard Oil's argument on this issue suffers from two fatal flaws.

First, Standard Oil chooses to focus its argument here not on the January 2008 change to Mr. Wolinsky's compensation structure, but rather on his suspension and termination in April 2008, arguing that Mr. Wolinsky cannot refute that Standard Oil took these actions for his insubordination.  This Court agrees that employers are generally free to discipline employees for insubordination.  But of the alleged acts of insubordination cited by Standard Oil, virtually all of them occurred *after* Mr. Wolinsky's compensation structure was changed.  *See* Defs.' Mem. in Supp. of Summ. J. [doc. # 68] at 23-26.  Obviously, then, this insubordination (assuming it occurred) cannot be a legitimate basis for Standard's Oil earlier adverse employment action – the change to Mr. Wolinsky's

compensation – a fact which Standard Oil seemingly ignores.

Second, even assuming that Mr. Wolinsky was insubordinate, it cannot be seriously disputed that Standard Oil was at the same time very unhappy that Mr. Wolinsky was filing DOL complaints. According to statements in Mr. Wolinksy's affidavit – which, again, this Court must accept as true if based upon an appropriate foundation, *see Burg*, 591 F.3d at 97 – shortly after he filed his first DOL complaint, Mr. Cohen told Mr. Wolinksy that the company "want[ed] him gone," *see* Wolinsky's Aff. [doc. # 77-1] ¶ 36; it is undisputed that he and the company engaged in at least limited negotiations over a severance package shortly thereafter; and the company went to great pains to identify Mr. Wolinsky to coworkers as the source of the complaints.[4]  Additionally, while many of the other actions of Standard Oil identified in the Complaint [doc. # 1] may not rise to the level of independent acts of retaliation, they do corroborate Mr. Wolinksy's suggestion that Standard Oil was generally unhappy with him, and a jury could reasonably conclude that this was motivated, at least in part, by his protected activity.  *See Burg*, 591 F.3d at 97.

At oral argument, counsel for Standard Oil strenuously argued that it was entitled to summary judgment on the basis of Mr. Wolinsky's undisputed acts of insubordination.  In particular, he argued that courts routinely grant summary judgment in cases just like this one, where there is ample evidence that the employer terminated the employee for clear insubordination.  Upon request, Defendant's counsel identified four cases as supportive of this proposition.  Before discussing these cases – none of which provide the support urged by Standard Oil – the Court notes once more that even if it were to accept the argument that Mr. Wolinsky was suspended and terminated for

---

[4] On a related note, Standard Oil apparently suspended employees' commissions as a result of one of Mr. Wolinsky's DOL complaints – an action that could undoubtedly engender animosity in the workplace toward the perceived cause of this change.

insubordination, that would have no effect on the retaliation claim premised on the changes to Mr. Wolinsky's compensation structure, which happened months earlier.

The first case Standard Oil identified at oral argument as supportive of this proposition – indeed, the case identified as the *most* supportive – is *Matima v. Celli*, 228 F.3d 68 (2d Cir. 2000). In *Matima*, the Second Circuit held that there was sufficient evidence for the jury to conclude, as it did, that while the plaintiff had shown that retaliation for protected activity was a motivating factor for defendant's decision to terminate the plaintiff, the employer had successfully shown that it would have terminated the plaintiff even if the unlawful motivation was not present due to his disruptive and insubordinate behavior. *See id.* at 80-81. The inapplicability of *Matima* should be obvious from even this cursory discussion: *Matima* was resolved by a jury, whose sole task it is to resolve factual disputes like those presented in this case. In fact, prior to trial, the district court denied a motion for summary judgment because of factual disputes. *See id.* at 76-77. Thus, Standard Oil's appeal to *Matima* as supporting its motion for summary judgment is unavailing.

Two of the other cases cited by Standard Oil are even less helpful. Each case involved the appellate review of Administrative Law Judge's findings of fact – after a hearing – on the highly-deferential "substantial evidence" standard. *See Harrison v. Admin. Rev. Bd. of U.S. Dep't of Labor* 390 F.3d 752, 756 (2d Cir. 2004); *Majali v. U.S. Dep't of Labor*, 294 Fed Appx 562, 567 (11th Cir. 2008) (per curiam). Here again, the inapplicability of these cases should be self-evident. While *Harrison*, *Majali*, and *Matima* do stand for the general and uncontroversial proposition that an employer can terminate an employee for unprotected violations of company policy and/or for disrupting the workplace, they certainly do *not* support the contention urged by Standard Oil: that said violations and/or disruptions effectively immunize the company from liability when there is

15

evidence supporting the inference that an unlawful motive played a role in the termination.

The final case upon which Standard Oil relies, *Holt v. KMI-Continental, Inc*., 95 F.3d 123 (2d Cir. 1996), is the only one resolved on a motion for summary judgment. *Holt*, in relevant part, affirmed the decision of the district court that granted summary judgment to the defendant on plaintiff's claims of race and sex discrimination and retaliation under Title VII. *See id.* at 126.   In regards to plaintiff's claims that promotion denials were improperly motivated, the Court found that the plaintiff "failed to put forth any evidence to suggest that defendant's articulated non-discriminatory reasons are pretextual." *Id.* at 130.  The only evidence put forth by plaintiff was "her personal belief that she was the most qualified person for the various positions," *id.*, but the Court found that the undisputed evidence established this opinion was factually incorrect. *See id.*  As for the retaliation claim, the Court found that plaintiff had again failed to provide any evidence that a slightly-less-than-perfect job review and the defendant's failure to hire an attorney to work with the plaintiff (per a company-wide hiring freeze) were pretextual. *See id.*   Regarding the ultimate decision to fire plaintiff, the Second Circuit agreed with the district court that the company had legitimate business reasons for doing so – namely, that the plaintiff was disruptive; that clients had complained about her; and that she did not take direction from supervisors – and that the plaintiff had failed to offer any evidence suggesting pretext beyond her personal, unsubstantiated belief that her termination was due to retaliation, rather than because of her disruptive and insubordinate conduct. *See id.* at 130-31.

While *Holt* is certainly more relevant than the other cases previously discussed, contrary to Standard Oil's argument, it does not justify summary judgment in this case.  As previously discussed, and unlike the plaintiff in *Holt*, Mr. Wolinksy *has* produced sufficient admissible

evidence from which a reasonable jury could conclude that his suspension and termination were motivated, at least in part, by retaliatory animus.  The Court does not doubt that Standard Oil's allegations regarding Mr. Wolinsky's insubordinate behavior, if proven at trial, could constitute "legitimate reasons for firing an employee."  *Holt*, 95 F.3d at 130.  But when there is sufficient admissible evidence supporting an inference of a retaliatory motive, it is not for this Court to decide that one party's factual assertions are true and the other's is not; that is solely for the jury.  Standard Oil is free, of course, to request a "mixed motive" jury instruction, just as the defendant in *Matima* did, *see* 228 F.3d at 80-81, or to simply leave the burden of proving causation and rebutting Standard Oil's legitimate, non-discriminatory reason with Mr. Wolinsky.  *See id.*; *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 185 (2d Cir. 1992) ("We reject the district court's view that a claim of retaliation necessarily presents only a pretext case and cannot be a mixed-motives case.").

Therefore, for the foregoing reasons, Standard Oil's Motion for Summary Judgment [doc. # 66] on Count One, alleging retaliation in violation of the FLSA, is DENIED.

## IV.

The Court next considers the Defendants' Motion for Summary Judgment [doc. # 66] on the two remaining claims: Count Six, alleging libel *per se*, and Count Seven, alleging libel.  *See* Compl. [doc. # 1].  To establish a prima facie case of libel, a plaintiff must demonstrate that: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217 (2004).  "With each publication by the defendant, a new cause of action arises."  *Id.* "Libel or slander is also actionable *per se* if it charges a crime involving moral turpitude or to which

17

an infamous penalty is attached." *Miles v. Perry*, 11 Conn. App. 584, 602 (1987).  "[W]here statements constitute defamation *per se*, the plaintiff need not plead or prove injury to [his] reputation; it is presumed." *Cox v. Galazin*, 460 F.Supp.2d 380, 388 (D. Conn. 2006) (quotation marks and citation omitted).

The determination of whether or not a publication is libelous is a question of law to be determined by the Court based upon the face of publication itself, *see Charles Parker Co. v. Silver City Crystal Co.*, 142 Conn. 605, 612 (1955), with the potential exception of some matters pertinent to Defendants' claim of conditional privilege, *see Hopkins v. O'Connor*, 282 Conn. 821, 839 (2007); *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985).  In making this determination, the Court must consider the allegedly-libelous statement "in the sense in which common and reasonable minds would understand [it], . . . and [it] may not for this purpose be varied or enlarged by innuendo." *Proto v. Bridgeport Herald Corp*, 136 Conn. 557, 565 (1950).  In other words, the statement must be taken in the context in which it was said and would be understood by the average listener.  *See id.; Wash. Post Co. v. Chaloner*, 250 U.S. 290, 293 (1919).

The parties agree that Mr. Wolinksy's libel claims are premised on the March 31, 2008 letter written by Mr. Cohen to Standard Oil employees, which states, in relevant part, that "I think you know Roy [Friedman] and me well enough that we will not submit to extortion."  Extortion is included in Connecticut's definition of larceny, and is a class B felony, *see* Conn. Gen. Stat. §§ 53a-119(5), 122(a), and the Defendants do not dispute that allegations of extortion can form the basis of a claim of libel *per se*. That being said, however, the Defendants raise a flurry of arguments for summary judgment on Mr. Wolinsky's libel claims.  *See* Defs.' Mem. in Supp. of Summ. J. [doc. # 68] at 39-47.  All are unavailing.

Defendants' first argument is that the allegedly libelous statement was made during the course of a quasi-judicial proceeding – namely, a potential Connecticut or U.S. Department of Labor investigation resulting from Mr. Wolinsky's DOL complaints.  *See* Defs.' Mem. in Supp. of Summ. J. [doc. # 68] at 39-41.

> In Connecticut, [t]he class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings, and acts of State.  It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. . . .

*Lega Siciliana Social Club, Inc. v. St. Germaine*, 77 Conn.App. 846, 855-56 (2003) (citations and quotation marks omitted, alterations in original).  "[A]n absolute privilege also attaches to relevant statements made during administrative proceedings which are 'quasijudicial' in nature."  *Kelley v. Bonney*, 221 Conn. 549, 566 (1992) (citation omitted).  "Once it is determined that a proceeding is quasijudicial in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition."  *Id.* at 566 (quotation marks citation and omitted).

The Court previously considered this argument on a motion to dismiss.  *See* Defs.' Mot. to Dismiss [doc. # 21].  In denying that motion, this Court explained that:

> The absolute immunity inquiry is two-fold.  First, the proceeding in question must be a judicial or quasi-judicial proceeding. Mr. Wolinsky does not dispute that his wage practice complaints before the state and federal labor departments are quasi-judicial proceedings.  Second, the statement at issue must have been "made in the course of a judicial [or quasi-judicial] proceeding." *Hopkins v. O'Connor*, 282 Conn. 821, 839 (2007).  That the statement refers to the subject matter of a proceeding is not enough, as *Hopkins* itself shows. There, the Connecticut Supreme Court held that a police officer's disclosure of the pendency of a psychiatric commitment proceeding to the plaintiff's employer or co-workers was not "part of the judicial proceeding," because it was not made "pursuant to or in furtherance of a commitment proceeding." *Id.* at 849 ("The decision to inform others, unconnected with the process of the plaintiff's

> commitment, even if properly motivated out of concern for their safety, was in no
> way directed toward the achievement of the objects of litigation or any other
> proceedings.").

Order [doc. # 21] at 2-3, 2008 WL 3984593, at *1 (D. Conn. Aug. 25, 2008).  The Court explained

further that although "the ultimate issue of immunity is a question of law, it is apparent from

governing case law that resolving that issue depends upon the factual context in which the statement

is made."  *Id.* at *2.  Accordingly, since "the facts relating to the Standard Oil letter [were] not all

known," Defendants' Motion to Dismiss [doc. # 11] was denied, but without prejudice to renewal in

the form of a motion for summary judgment.  *Id.*

Defendants now renew that argument, asserting that they are entitled to absolute immunity

because the letter in question "was directed to potential witnesses to the pending quasijudicial

proceedings."  Defs.' Mem. in Supp. of Summ. J. [doc. # 68] at 40.  Defendants cite *Kelley v.*

*Bonney*, 221 Conn. 549 (1992), and *Rosenberg v. MetLife, Inc*., 493 F.3d 290 (2d Cir. 2007) (per

curiam) for the proposition that "no libel may be found as a matter of law because communications

to potential witnesses of a quasijudicial proceeding are absolutely privileged."  Defs.' Mem. in Supp.

[doc. # 68] at 41.

The Court finds this argument without merit.  To begin, Defendants seriously overstate the

holdings of *Kelly* and *Rosenberg*.  Defendants' reliance on *Rosenberg* can be dispensed with quickly.

In that case, the Second Circuit certified the question to the New York Court of Appeals of whether

the very form that the allegedly-libelous statements contained was entitled to an absolute or qualified

privilege.  *See Rosenberg v. Metlife, Inc.*, 453 F.3d 122 (2d Cir. 2006).  In response, the Court of

Appeals held that the statements were absolutely privileged, *see Rosenberg v. Metlife, Inc.*, 8 N.Y.3d

359, 368 (2007), effectively ending the Second Circuit's inquiry.  *See Rosenberg*, 493 F.3d at 291

("It is now clear that the statements on which [the plaintiff] bases his libel claim are absolutely privileged under New York law.").  The inapplicability of *Rosenberg* to this case is self-evident, and the Court will not belabor the point here.

*Kelly*, in contrast, requires a slightly more extended discussion.  There, a schoolteacher sued several people for statements made in and in support of a petition to have him decertified.  *See* 221 Conn. at 555-56.  The petition was submitted to the state board of education pursuant a state statute, Conn. Gen. Stat. § 10-145a, which outlines the decertification procedure.  *See* 221 Conn. at 567 n.13.  The Connecticut Supreme Court, after concluding that "a decertification proceeding before the state board of education is quasijudicial in nature," *id.* at 571, posed the first issue in the case as "whether [the defendant]'s submission of the verified petition and complaint was a step in that proceeding."  *Id.*  The Court answered the question by noting that the defendant's petition "was necessary under the circumstances to initiate the decertification process," subsequently concluding that "any statements made by [the defendant] in his verified petition and complaint filed pursuant to [the state statute] were absolutely privileged."  *Id.*

The Court then considered whether the absolute privilege extended to two other defendants who had been involved in the decertification petition process.  The first, a board member, had sent copies of the petition and complaint to the department of children and youth services; the state attorney general; and a newspaper.  *See id.* at 556, 574-75.  The Court emphasized that "not all communications relating to that topic are necessarily absolutely privileged. In determining whether an occasion is absolutely privileged, the pivotal factor is frequently to whom the matter is published. The privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged."  *Id.* at 575 (quotation marks and citations omitted).  While "[p]ublication to the

21

news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion," the Court held that since the public and media was independently entitled to view material submitted to public agencies under the Connecticut Freedom of Information Act, Conn. Gen. Stat. §§ 1-18a and 1-19, the defendants' submission of the material to the media "cannot provide a basis for a claim of defamation." 221 Conn. at 576.  Consequently, the Court found that the defendant who had given the news media copies of the petition was entitled to absolute immunity.  *See id.*

The other defendant considered by the Court, a parent, had submitted a letter to the board of education that was included with the petition and a complaint forwarded to the state board of education – both of which the Court held were clearly covered by the absolute privilege.  *See id.* at 572.  Additionally, however, she had telephoned other parents to encourage them to submit complaint letters as well, and during these conversations she had communicated the allegedly defamatory statements.  *See id.*  As to statements made during these telephone conversations, the *Kelly* Court concluded that since the statements were made to potential witnesses "for the purpose of marshaling evidence against the plaintiff to be used to support the complaint that was to be submitted to the state board of education," they were absolutely privileged.  *Id.* at 573.

This Court finds that the basis of Mr. Wolinsky's libel claims – Mr. Cohen's statement – is qualitatively different than those found privileged in *Kelly*.  Defendants argue that Mr. Cohen's statement was protected because it was communicated to potential witnesses: all of Standard Oil's employees.  There are a number of problems with this argument.  First, Standard Oil has not substantiated its claim that everyone to whom it published the statement was actually a potential witness.  As *Kelly* said, "the pivotal factor" in determining whether a statement was made "in the

course of" a quasijudicial proceeding "is frequently to whom the matter is published," *Kelly*, 221 Conn. at 575, and there are at least factual disputes as to whether Mr. Cohen's distribution of the statement was unnecessarily broad. *See id.* ("The privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged."); *see also Hopkins*, 282 Conn. at 849; *Fiondella, Inc. v. Reiner, Reiner & Bendett*, No. HHDCV085025357S, 2009 WL 5342490, at *10 (Conn. Super. Ct. Dec. 4, 2009); *Turner v. Dannenhoffer*, No. CV055001048S, 2007 WL 2318329, at *3 (Conn. Super. Ct. July 25, 2007).

Second, even if it was only sent to "potential witnesses," it does not appear to the Court that the purpose of Mr. Cohen's statement was "marshaling [of] evidence." *Kelly*, 221 Conn. at 573. "As *Kelly* suggests, there must be a nexus between the immunity, the fact-finding function of the court and the interest in having witnesses speak freely." *Pollock v. Panjabi*, 47 Conn. Supp. 179, 188 (Conn. Super. Ct. 2000) (internal citation omitted). Defendants do not establish this nexus, at least at the summary judgment stage. Mr. Cohen's statement appears to have been primarily (if not exclusively) aimed at discrediting Mr. Wolinsky's allegations; reassuring the Standard Oil employees that their employer was not engaging in illegal behavior; and encouraging them to not let the matter distract from their work. *See* Letter from David Cohen, Ex. A-46 to Defs.' Local Rule 56(a)1 Statement [doc. # 67] at 1 (alleging that Mr. Wolinksy had engaged in a "campaign to harass" Standard Oil employees because of changes to his compensation structure;; that "99% of what [Mr. Wolinsky] has written in his complaints is either false or grossly overstated"; expressing concern that "that this bizarre situation with [Mr. Wolinsky] can cause employees to lose focus, to get upset, and to spend more time gossiping than in being productive"; asking employees "not play into [Mr. Wolinsky]'s hands by letting this situation distract you"; and recommending that employees "ignore

23

[Mr. Wolinsky]'s selfish behavior.").  Standard Oil has every right to make these kinds of statements, of course; but since they were not "directed toward the achievement of the objects of the litigation or other proceedings," they are not the kind of "preliminary meetings, conduct and activities" that *Kelly* said are protected.  *Kelly*, 221 Conn. at 573-74 (quoting *Brody v. Montalbano*, 87 Cal. App. 3d 725, 734 (1978)).

Further strengthening the Court's conclusion that Mr. Cohen's statement was not aimed at marshalling evidence is the fact that, at this point, the possibility of any proceeding was quite remote.  In fact, as the face of his letter reflects, Mr. Cohen did not know if there ever would be such a proceeding.  *See* Letter from David Cohen, Ex. A-46 to Defs.' Local Rule 56(a)1 Statement [doc. # 67] at 1 (stating that he was "highly confident that *if* there is an investigation, . . .  the matter will be resolved squarely in [Standard Oil's] favor") (emphasis added).  Just as "[t]he bare possibility that [a] proceeding might be instituted" may not "be used as a cloak to provide immunity for defamation," *Albert v. Shaikh*, No. CV030825352S, 2003 WL 22904562, at *6 (Conn. Super. Ct. Nov. 25, 2003) (quoting Restatement (Second) of Torts § 588 cmt. e), the fact that an investigation *did* subsequently occur in this case is irrelevant if Mr. Cohen's statement was not actually related to that possibility.  *Cf. Hopkins*, 282 Conn. at 837 (holding that a police officer has absolute immunity for statements made to initiate a civil commitment proceeding regardless of the outcome of that proceeding); *Morgan v. Bubar*, 115 Conn. App. 603, 622 (2009).

The Connecticut Appellate Court's holding in *Lega Siciliana Social Club, Inc. v. St. Germaine*, 77 Conn. App. 846 (2003) supports this Court's conclusion.  There, the Appellate Court held that a letter sent by a resident unhappy that a neighborhood social club had been granted a liquor license was not protected by the absolute privilege.  *See id.* at 834.  The *St. Germaine* Court

24

reached this conclusion because the statement was made neither in the course of a quasi-judicial proceeding or in an attempt to initiate such a proceeding.  *See id.*  The court explained that while the zoning board was acting as an administrative body in a quasijudicial capacity in passing upon the issuance of the club's liquor permit, the resident's letter was sent too long after the club had obtained its liquor license to be related to that proceeding.  *See id.* at 835.  The court also rejected the contention that the letter could be read as an attempt to initiate a review proceeding, explaining that

> To accept that contention would be tantamount to stating that any citizen may write a defamatory letter to a municipal officer at any time under a cloak of immunity on the basis of a belated claim that the communication is an unspoken effort to initiate a governmental proceeding.  That we will not do.

*Id.*  Accepting Defendants' argument that they are entitled to absolute immunity would require a similar leap beyond the policy justifications for the absolute immunity doctrine.  As in *St. Germaine*, this the Court will not do.[5]

The Court will not discuss in depth the Defendants other arguments as to the libel claims, but suffice it to say that factual disputes remain that preclude summary judgment on either of the two counts.  That said, Mr. Cohen did retract the allegedly-libelous statement upon Mr. Wolinsky's request.  *See* Ex. A-52 to Cohen Aff. [doc. # 68-1].  Therefore, as Mr. Wolinsky's counsel conceded at oral argument, since Mr. Wolinksy did not allege special damages, he can only recover on either of the libel claims if he proves malice in fact.  *See* Conn. Gen. Stat. § 52-237 ("[U]nless the plaintiff

---

[5] Defendants also argue that they are entitled to a "qualified privilege" because Mr. Cohen's statement was made "in furtherance of Defendants' business interests."  Defs.' Mem. in Supp. [doc. # 68] at 41.  But Defendants cite no cases that have ever accepted such a rationale for a qualified privilege, and even if the Court were to accept such a justification, there would be disputed issues of fact as to whether or not Defendants have proven all the required elements.  *See Blake-McIntosh v. Cadbury Beverages, Inc*., No. 3:96CV2554, 1999 WL 464529, at *8 (D. Conn. June 25, 1999) ("The essential elements of a qualified privilege include good faith, an interest to be upheld or a duty to be performed, a statement limited in its scope to this purpose, a proper occasion, and publication in a

proves either malice in fact or that the defendant [failed to retract the allegedly-libelous statement], the plaintiff shall recover nothing but such actual damage as the plaintiff may have specially alleged and proved."); *Moriarty v. Lippe*, 162 Conn. 371, 387-88 (1972).

### V.

For the foregoing reasons, Standard Oil's Motion for Summary Judgment [doc. # 66] on Count One, alleging FLSA retaliation, is DENIED; and both Defendants' Motion for Summary Judgment [doc. # 66] on Counts Six and Seven, alleging libel and libel *per se*, are DENIED.  **The Court will issue a trial scheduling order separately.**

IT IS SO ORDERED.

/s/  <u>Mark R. Kravitz</u>
United States District Judge

**Dated at New Haven, Connecticut: May 5, 2010.**

---

proper manner to proper parties only.").

26